Dennis F. Dunne
Risa M. Rosenberg
Jeremy C. Hollembeak
MILBANK, TWEED, HADLEY & M^cCLOY LLP
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Andrew M. Leblanc (*pro hac vice* pending)
MILBANK, TWEED, HADLEY & M^cCLOY LLP
1850 K Street, NW
Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500

*Attorneys for Alejandro Francisco Sánchez-Mujica as*
*Foreign Representative of Vitro, S.A.B. de C.V.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>VITRO, S.A.B. de C.V.,<br><br>    Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 11-_____ (___) |

**DECLARATION OF ALONSO RIVERA GAXIOLA,**
**AS MEXICAN COUNSEL TO VITRO, S.A.B. DE C.V.,**
**IN SUPPORT OF CHAPTER 15 PETITION FOR RECOGNITION OF**
**FOREIGN MAIN PROCEEDING AND REQUEST FOR RELATED RELIEF**

I, Alonso Rivera Gaxiola, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am the founding and majority partner in the Mexico-based law firm of Rivera Gaxiola y Asociados, S.C., located at Boulevard Manuel Ávila Camacho 32, Torre Esmeralda III, Piso 11, Colonia Lomas de Chapultepec, 11000, México, D.F. I hereby submit this declaration (this "Declaration") in support of the form chapter 15 petition and Verified Petition for Recognition of Foreign Main Proceeding and Request for Related Relief dated April 14, 2011

(together, the "Chapter 15 Petition") of Vitro, S.A.B. de C.V. ("Vitro SAB"), which is being filed contemporaneously herewith by Alejandro Francisco Sánchez-Mujica, Vitro SAB's duly-appointed foreign representative, and which seeks entry of an order (i) recognizing a voluntary judicial reorganization proceeding (the "Voluntary Mexican Proceeding") commenced on December 13, 2010 with respect to Vitro SAB under the Mexican Business Reorganization Act (as defined below) in the Federal District Court for Civil and Labor Matters for the State of Nuevo León (the "District Court of Nuevo León") as a "foreign main proceeding" pursuant to sections 1515 and 1517 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "U.S. Bankruptcy Code") and (ii) granting related relief pursuant to section 1520 of the U.S. Bankruptcy Code.

2. Although Spanish is my native language, I am fluent in English and have elected to execute and submit this Declaration in the English language.

3. In this Declaration, after describing my background and qualifications, I provide a description of the general structure of those provisions of the United Mexican States' *Ley de Concursos Mercantiles*, as officially published in the *Diario Oficial de la Federación* on May 12, 2000 (as amended, the "LCM" or "Mexican Business Reorganization Act"),[1] that are relevant to this Court's consideration of the Chapter 15 Petition and the status of Vitro SAB as the subject of the Voluntary Mexican Proceeding, as well as two involuntary proceedings pending in the District Court of Nuevo León (together with the Voluntary Mexican Proceeding, the "Mexican Proceedings").

4. In preparing this Declaration, I have not relied on any confidential attorney-client communications or on confidential documents prepared in anticipation of litigation. In preparing

---

[1] The Spanish version of the Mexican Business Reorganization Act can be found on the Internet website of IFECOM (as defined below) at http://www.ifecom.cjf.gob.mx/PDF/LCMyND/8.pdf.

this Declaration, I have reviewed, among other things, (i) the Chapter 15 Petition, (ii) the Mexican Business Reorganization Act as it relates to chapter 15 of the U.S. Bankruptcy Code, and (iii) the relevant pleadings, judicial orders, and related documents in the Mexican Proceedings.

5. I have reviewed the discussion of the Mexican Proceedings in the declaration of Alejandro Francisco Sánchez-Mujica, Vitro SAB's duly-appointed foreign representative, in support of the Chapter 15 Petition, and affirm that it is consistent with public documents and/or my personal knowledge regarding such proceedings. Additionally, I hereby affirm that the declaration of *concurso mercantil* issued in the Voluntary Mexican Proceeding does, in law and fact, constitute a Business Reorganization Judgment (as defined below) in the Voluntary Mexican Proceeding.

## BACKGROUND AND QUALIFICATIONS

6. Pertinent aspects of my legal background are as follows: I earned my law degree from the *Universidad Nacional Autónoma de México*, in Mexico City, in 1998. I am a co-founder of the law firm Rivera Gaxiola y Asociados S.C. and have been a practicing attorney with this firm since 2002. I have significant experience in corporate, civil, commercial, and administrative litigation in Mexico, as well as in Mexican and international arbitration. As part of my practice, I have been involved in several insolvency litigation proceedings under the Mexican Business Reorganization Act.

7. Since October 2008, I have represented and advised Vitro SAB with respect to a planned financial restructuring, and I am the counsel of record for Vitro SAB in the Mexican Proceedings. All papers submitted by Vitro SAB in the Mexican Proceedings have been drafted by me or under my supervision. In addition to serving as insolvency and restructuring counsel, I

3

have also advised Vitro SAB with respect to other corporate and litigation matters since November 2006.

**MEXICAN BUSINESS REORGANIZATION ACT**
*(LEY DE CONCURSOS MERCANTILES)*

**A.   Overview of Pertinent Provisions of Mexican Business Reorganization Act**

8.   The Mexican Business Reorganization Act, which went into effect on May 15, 2000, was intended to replace Mexico's 1943 *Ley de Quiebras y de Suspensión de Pagos*, officially published in the *Diario Oficial de la Federación* on April 20, 1943. The older law was frequently criticized for delays in concluding proceedings.

9.   The Mexican Business Reorganization Act expressly recognizes that it is "in the public interest to preserve companies and to prevent a general default in payment from risking their failure and the failure of other companies with which they have dealings." (LCM, Art. 1.) To that end, the Mexican Business Reorganization Act establishes a governing process for *concurso mercantiles* ("Business Reorganization Proceedings" or "Proceedings") similar in many respects to that which, as I understand, exists under chapter 11 of the U.S. Bankruptcy Code in the United States.[2]

**(i)   Initiation of Business Reorganization Proceeding**

10.   A Business Reorganization Proceeding in Mexico is commenced by the filing of a *demanda o solicitud de declaración de concurso mercantile* (a "Petition") either by a debtor, a creditor, or a government official. (See LCM at Art. 21.) Under the Mexican Business Reorganization Act, a Petition must be filed in the federal district court (the "Mexican District Court") in the jurisdiction in which the debtor has its *domicilio social* ("Corporate Domicile") or, in certain cases, in which the debtor has the principal management of its business. (See LCM at

---

[2]   The following description of a Business Reorganization Proceeding summarizes only the most pertinent provisions of the Mexican Business Reorganization Act.

4

Arts. 3; 17.) Once it is filed, a Petition is preliminarily reviewed by the Mexican District Court and admitted for further proceedings so long as it contains the information and disclosures required by the Mexican Business Reorganization Act. (See LCM at Art. 20.)

### (ii) Issuance of Business Reorganization Judgment

11. Under the Mexican Business Reorganization Act, a Business Reorganization Proceeding progresses in phases. *La etapa de conciliación* (the "Conciliation Phase") – during which reorganization is attempted – does not begin unless and until the Mexican District Court issues a *declaración de concurso mercantil* (a "Business Reorganization Judgment") declaring that the debtor named in the Petition meets the requirements for being the subject of a Proceeding under the Mexican Business Reorganization Act (collectively, the "Insolvency Requirements"). Once a Business Reorganization Judgment has been issued, *la masa* (an "Estate") consisting of all of the debtor's assets and liabilities is automatically created, and all actions by creditors to enforce judgments or otherwise seize the debtor's assets are automatically stayed. (See LCM at Art. 43, section IX; Art. 65.)[3]

#### 1) *Examination Phase*

12. Ordinarily, before a Business Reorganization Judgment can be issued in a voluntary or involuntary Proceeding, a *visita de verificación* (an "Examination Phase") must take place to determine whether the Insolvency Requirements have been met. (See LCM at Art. 30.) During the Examination Phase, a *visitador* (a "*Visitador*")[4] examines the books and records of a debtor and issues a report to the Mexican District Court setting forth its findings vis-à-vis the

---

[3] In relevant part, Article 65 of the Mexican Business Reorganization Act provides "[f]rom the business reorganization judgment issue date to the end of the conciliation phase, no seizure or enforcement order may be executed against the [debtor's] properties and rights." (See LCM at Art. 65.)

[4] The *Visitador* is appointed by the Federal Institute of Business Reorganization Specialists (*Instituto Federal de Especialistas de Concursos Mercantiles,* or "IFECOM"), a branch of the Mexican federal judiciary.

5

Insolvency Requirements and the facts alleged in the Petition or defenses raised in objection thereto. (See LCM at Art. 10.) Upon completion of the *Visitador*'s report, a period of time is reserved for parties to submit responses thereto and in certain cases additional evidence, after which the Mexican District Court must decide whether to grant or deny a Business Reorganization Judgment. (See LCM at Arts. 41-42.)

### 2) *Mexican Pre-Pack Process*

13. Prior to the Conciliation Phase, the process in a prepackaged Business Reorganization Proceeding (a "Mexican Pre-Pack") is different. Under the Mexican Business Reorganization Act, upon the filing of a Petition together with a prepackaged restructuring plan, and the admission thereof by the Mexican District Court, no *Visitador* is appointed. In lieu of the Examination Phase, a representative of a debtor must declare under penalty of perjury that the debtor meets the thresholds provided for by the Mexican Business Reorganization Act to be eligible for a Mexican Pre-Pack.[5] (See LCM at Arts. 10-11; 339.) The Mexican District Court thereafter decides whether to issue a Business Reorganization Judgment based on such representative's declaration. (See LCM at Art. 341.) Once the Mexican District Court grants a Business Reorganization Judgment, a Mexican Pre-Pack thereafter follows the same process as an ordinary Business Reorganization Proceeding. (See LCM at Art. 342.)

### (iii) Conciliation Phase

14. As noted above, the issuance of a Business Reorganization Judgment begins the Conciliation Phase of a Proceeding. During this phase, a *conciliador* (a "Conciliator") is appointed by IFECOM to facilitate an agreement between the debtor and its creditors on the

---

[5] For example, in addition to certain requirements concerning the financial status of the debtor, in a Mexican Pre-Pack, the Mexican Business Reorganization Act requires that the prepackaged plan be filed with the consent or approval from creditors representing at least 40% of all of a debtor's outstanding liabilities. (See LCM Art. 339.)

terms of a reorganization. (See LCM at Art. 43, sections IV, V.) The Conciliator is empowered to "monitor the accounting and any transactions carried out by the [debtor]," as well as to reject executory contracts and authorize the incurrence of additional debt and sale of assets outside the ordinary course of business. (See LCM at Art. 75.) A Conciliator is further empowered to ask the Mexican District Court to remove and replace the management of the debtor if it believes that doing so will protect the Estate. (See LCM at Art. 81.) It is important to note, however, that during the Conciliation Phase, unless and until the Mexican District Court orders otherwise, the debtor remains in possession, continues to manage its business and properties, and can generally act without obtaining court authorization. (See LCM at Art. 74.)

### 1) *Claims Recognition*

15. Once the Conciliation Phase has begun, creditors (including foreign creditors) have the opportunity to submit proofs of claim. (See LCM Arts. 122; 290-291.) Within 30 days of the publication of the Business Reorganization Judgment, the Conciliator submits a provisional list of creditors to the Mexican District Court based, among other things, on such proofs of claim, the Petition (including concurrently submitted documentation), and the *Visitador*'s report or representative declaration in the case of a Mexican Pre-Pack, as applicable. (See LCM at Art. 121.) Creditors are permitted to object in writing to the Conciliator's provisional list, after which the Conciliator prepares and submits a final list of creditors to the court. (See LCM at Arts. 129-130.) Thereafter, the Mexican District Court issues an order recognizing (i.e., allowing) the amount and priority of all claims against the Estate (the holders of such claims hereinafter referred to as "Recognized"). (See LCM at Art. 132.)

### 2) *Formulation and Approval of Reorganization Plan*

16. The goal of the Conciliation Phase is for the formation of a *convenio concursal* (a "Reorganization Plan") that is agreed to by the requisite majority of Recognized creditors and

approved by the Mexican District Court.  (See LCM at Art. 3.)  Under the Mexican Business Reorganization Act, in order for a Reorganization Plan to be effective, it must be agreed to by the debtor and Recognized creditors that, together, represent more than fifty percent (50%) of the sum of (i) the amounts recognized to all Recognized Common Creditors (as defined below), plus (ii) the amount recognized to only those Recognized creditors with Collateral or Special Privilege (each as defined below) who agree to the Reorganization Plan.  (See LCM at Art. 157.)  If a debtor succeeds in formulating a Reorganization Plan that the Conciliator believes will be agreed to by the requisite majority of Recognized creditors, the Conciliator will submit the plan to Recognized creditors for a period of ten days for their consideration and approval.  (See LCM at Art. 161.)

17. Thereafter, assuming it is approved by the requisite majority, the Conciliator will submit the Reorganization Plan, which has been duly-signed by the debtor and approving Recognized creditors, to the Mexican District Court for its own review and approval.  (See LCM at Art. 161.)  This submission is followed by a period of five days during which Recognized creditors may object to the Reorganization Plan regarding the authenticity of the expression of their consent or exercise their veto right.[6]  (See LCM at Art. 162.)  Following this period, the Mexican District Court will review the Reorganized Plan and any objections thereto or purported vetoes thereof, and will issue an order approving such plan if it finds that the "proposed agreement meets all of the [applicable] requirements [of the Mexican Business Reorganization Act] . . . and is not inconsistent with any public policy provision."  (See LCM at Art. 164.)  Once approved by the Mexican District Court, the Reorganization Plan is binding on the debtor, all

---

[6] Pursuant to the Mexican Business Reorganization Act, a Reorganization Plan may be vetoed by Recognized Common Creditors (as defined below) who (i) represent a simple majority in number of all Recognized Common Creditors, regardless of the total amount of their recognized claims, or (ii) hold at least fifty percent (50%) of the aggregate amount of recognized claims held by all Recognized Common Creditors.  (See LCM at Art. 163.)

Recognized Common Creditors (whether or not such creditors agreed with and/or duly-signed the plan after it was submitted to them by the Conciliator), and all creditors with Collateral to the extent they agreed to the plan or are otherwise receiving full value for their collateralized claims thereunder. (See LCM at Art. 165.)

### 3) *Termination of Conciliation Phase*

18. The term of a Conciliation Phase is 185 days, but can be extended under certain circumstances to a maximum of no longer than 360 days in total. (See LCM at Art. 145.) If, during such term, a Reorganization Plan is submitted to and thereafter approved by the Mexican District Court, the Conciliation Phase (and, indeed, the entire Business Reorganization Proceeding) will terminate once the Reorganization Plan is approved by the Court. (See LCM at Art. 262.) Alternatively, the Conciliation Phase can expire or be terminated for cause which, in either case, results in the commencement of a new phase in the Proceeding, the purpose of which is the liquidation of the debtor.

### (iv) Liquidation Phase

19. Similar to the Conciliation Phase, which commences upon the issuance of a Business Reorganization Judgment, *la etapa de quiebra* (the "Liquidation Phase") commences upon the issuance by the Mexican District Court of *la declaración de quiebra* (a "Liquidation Judgment"). A Liquidation Judgment can be issued (i) upon the debtor's request, (ii) upon the expiration of the Conciliation Phase without a Reorganization Plan having been submitted to the Mexican District Court, or (iii) upon the request of the Conciliator prior to the expiration of the Conciliation Phase, if the Mexican District Court finds that attainment of a Reorganization Plan is not feasible. (See LCM at Arts. 167; 150.) Upon the issuance of a Liquidation Judgment, the debtor is removed from management of its business and replaced by *un síndico* (a "Trustee"). Upon being appointed by IFECOM, the Trustee takes over the debtor's business and possession

of the Estate, and has 60 days to submit a report to the Mexican District Court providing an accounting of the debtor's assets and financial condition. (See LCM at Arts. 181-187; 190.)

20. During the Liquidation Phase, the Trustee is responsible for liquidating the Estate and distributing the proceeds thereof to Recognized creditors according to the priority of their claims. (See LCM at Arts. 197-200; 217-224.) The Trustee may sell the Estate as a going concern and/or individual assets using the public auction procedure established Pursuant to the Mexican Business Reorganization Act.[7] At least once every two months, the Trustee must submit a report to the Mexican District Court setting forth, among other things, the sales made during such period and the Recognized creditors who should be paid from the proceeds therefrom, including the corresponding *cuota concursal*, formerly known as *moneda de quiebra* (literally, the "Currency of the Bankruptcy"), i.e., the percentage of recovery which should be received by such creditors on account of their claims. (See LCM at Art. 229.) Upon submission of each report, the Mexican District Court gives notice thereof to all Recognized Creditors for a three-day period, after which it issues an order setting forth the manner and terms of distribution of available cash in the Estate. (See LCM at Art. 231-232.) This process continues so long as there are Estate assets available for sale. (See LCM at Art. 231.)

21. The Liquidation Phase concludes and the Proceeding terminates when, among other things, partial payment to Recognized creditors has been made in the Currency of the Bankruptcy and there are no more assets to sell. (See LCM at Art. 262.) The Mexican Business

---

[7] By statute, sales pursuant to this procedure are free of any existing liens. (See Civil Code for the Federal District in Local Matters and for all of the Republic in Federal Matters at Art. 2325.) There are two exceptions to this procedure under the Mexican Business Reorganization Act, whereby the Trustee may sell property without conducting a public auction. First, the Trustee may sell assets of the Estate using a different method if it believes such method of sale will result in a greater value, provided it obtains prior authorization from the Mexican District Court to do so. (See LCM at Arts. 205-206.) Second, the Trustee may immediately, and without having to obtain prior authorization from the Mexican District Court, sell those assets that cannot be preserved by the Estate without risking imminent deterioration in their sale value or expending amounts to preserve such value which are disproportionate to the benefit of their preservation. (See LCM at Arts. 208.)

Reorganization Act does not provide a discharge to the debtor at the conclusion of the Liquidation Phase and, therefore, even after the Proceeding has terminated, those creditors who did not obtain full payment of their claims maintain an action individually against the debtor for the balance thereof. (See LCM at Art. 235.)

**B.    Mexican Business Reorganization Act Satisfies To the Best of My Knowledge All Applicable Factors of Section 1507 of the U.S. Bankruptcy Code for Granting Additional Relief**

22.    I understand from Vitro SAB's U.S. counsel that section 1507(b) of the Bankruptcy Code provides:

> (b) In determining whether to provide additional assistance under this title or under other laws of the United States, the court shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure—
>
> > (1) just treatment of all holders of claims against or interests in the debtor's property;
> >
> > (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
> >
> > (3) prevention of preferential or fraudulent dispositions of property of the debtor;
> >
> > (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and
> >
> > (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 1507(b). In support of any additional assistance that Vitro SAB has requested in the Chapter 15 Petition or may thereafter request, I submit that, to the best of my knowledge, the Mexican Business Reorganization Act comports with the considerations outlined in section 1507(b) of the U.S. Bankruptcy Code for the following reasons.

### (i) Provisions Providing for Just Treatment of All Holders of Claims Against or Interests in a Debtor's Property

23. In accordance with my understanding of section 1507(b)(1) of the U.S. Bankruptcy Code, the Mexican Business Reorganization Act provides for the just treatment of all holders of claims against or interests in a debtor's property, including foreign creditors. Specifically, the Mexican Business Reorganization Act provides that "foreign creditors shall have the same rights as Mexican creditors in relation to the commencement of a proceeding in this State and the participation in it pursuant to this act." (See LCM at Art. 290.)

### (ii) Protection of Foreign Creditors Against Prejudice and Inconvenience in Processing of Claims in Voluntary Mexican Proceeding

24. In accordance with my understanding of section 1507(b)(2) of the U.S. Bankruptcy Code, the Mexican Business Reorganization Act protects the rights of foreign creditors, including those in the United States, against prejudice and inconvenience in the processing of claims against a debtor. Specifically, the Mexican Business Reorganization Act expressly provides that claims of foreign creditors will be treated exactly the same as those of domestic creditors and even extends the term for filing initial proofs of claim for foreign creditors. (See LCM at Arts. 290-291.)

### (iii) Protection Against Preferential or Fraudulent Disposition of Property of a Debtor

25. In accordance with my understanding of section 1507(b)(3) of the U.S. Bankruptcy Code, the Mexican Business Reorganization Act contains several protections against the preferential or fraudulent disposition of property of a debtor's estate.

26. First, throughout the entire process of Proceeding, a debtor's Estate is subject both to the review of a Mexican District Court and the specific review and supervision of an

independent professional—i.e., the *Visitador* (during the Examination Phase),[8] the Conciliator (during the Conciliation Phase), and the Trustee (during the Liquidation Phase). (See LCM at Art. 75.)

27. Second, Chapter VI of Title Three of the Mexican Business Reorganization Act (Articles 112-119) sets forth specific provisions prohibiting fraudulent acts against creditors, including fraudulent conveyances, transactions with family members, and transactions with related business associations.

28. Third, if the Conciliator believes the debtor is engaging in fraud or preferential treatment of creditors, he or she may ask the Mexican District Court to remove the debtor from management. (See LCM at Art. 81.)

### (iv) Provisions Pertaining to Priority and Distribution of a Debtor's Property or Proceeds Thereof

29. Finally, in accordance with my understanding of section 1507(b)(4) of the U.S. Bankruptcy Code, the Mexican Business Reorganization Act provides for the recognition and prioritizing of creditor claims and the distribution of estate assets in accordance with such ranking, substantially in accordance with my understanding of the prioritization scheme provided by the U.S. Bankruptcy Code. Articles 217 through 228 of the Mexican Business Reorganization Act set forth a comprehensive ranking of creditor priorities. Apart from the *sui generis* category of "singularly privileged creditors," creditor classes are categorized and ranked as creditors with Collateral, creditors with Special Privileges, and Common Creditors (each defined and discussed further below). (See LCM at Art. 217.)

30. "Creditors with collateral" are defined as mortgagees and pledgees—based on the most common forms of security interest in Mexico. Such creditors are paid distributions out of

---

[8] Because the Voluntary Mexican Proceeding is a Mexican Pre-Pack, no *Visitador* was appointed.

the proceeds of the property used to collateralized their mortgages or pledges, and generally in the order that such pledges or mortgages have been registered in accordance with the applicable Mexican laws. (See LCM at Art. 219.)

31. "Creditors with a special privilege" are "those who, according to the Mexican Commerce Code or the applicable law, have a special privilege or a retention right," such as sellers in possession. (See LCM at Art. 220.)

32. "Common Creditors" are all creditors other than those described above. Such creditors collect on a *pro rata* basis without distinction as to the dates their claims against the debtor arose. (See LCM at Art. 222.)

33. Additionally, the Mexican Business Reorganization Act recognizes labor claims for salaries and wages arising from the last two years prior to the Business Reorganization Judgment and certain administrative expenses of a debtor's Estate which receive priority over any other claim, including: (i) expenses incurred by the debtor in the administration of the Estate, provided that such expenses are approved by the Conciliator; (ii) expenses incurred in connection with the protection and preservation of the Estate; (iii) expenses incurred as a result of judicial or extra-judicial proceedings that benefit the Estate; and (iv) the necessary fees and expenses incurred by the Conciliator, so long as such fees and expenses are in accordance with the regulations of the IFECOM. These administrative expenses do not take priority, however, over creditors with collateral—which are senior in the order of priority—unless such expenses are (a) the result of "any litigation filed to defend or recover any properties which were the subject of the collateral or to which the privilege applies" or (b) "necessary for the repair, preservation and sale" of the collateral to which the privilege applies. (See LCM at Arts. 224-225.)

34. Finally, Article 221 of the Mexican Business Reorganization Act requires that any tax and labor related liabilities be paid after satisfaction of the claims of creditors with Collateral. If a tax liability is secured by collateral, however, such liability will be treated in accordance with the priority afforded to creditors with Collateral. (See LCM at Arts. 217; 225.)

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 14th day of April, 2011
in Santa Fé, México, D.F.

/s/_ Alonso Rivera Gaxiola
Alonso Rivera Gaxiola

Rivera Gaxiola y Asociados, S.C.
Boulevard Manuel Ávila Camacho 32, Torre Esmeralda III, Piso 11
Colonia Lomas de Chapultepec, 11000, México, D.F.
Telephone: 52-55-1084-1230
Fax: 52-55-1084-1239

*Corporate and Restructuring Counsel to Vitro, S.A.B. de C.V. in Mexican Proceedings*